# ORIGINAL

*つけ*

20
7/16/0

FILED
HARRISBURG, PA

JUL 15 2002

MARY E. D'ANDREA, CLERK
Per _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY BOYD WILKINSON and SHARON WILKINSON, husband and wife, | : CIVIL ACTION |
|         Plaintiffs | : |
| | : |
|    v. | : |
| | : JURY TRIAL DEMANDED |
| NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION, | : JUDGE SYLVIA H. RAMBO |
|         Defendants | : |
| | : NO. 01-CV-1146 |
|    v. | : |
| | : |
| GPS TERMINAL SERVICES, INC., | : |
|     Third Party Defendant | : |

## BRIEF OF NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page #

I.   FACTUAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   Are there not sufficient facts upon which it may be
       found that, at the time of his alleged accident, Plaintiff
       was not an employee of the Railroad as required for assertion
       of a cause of action under the FELA? . . . . . . . . . . . . . . . . . . . . . . 6

    B..  As the employee of an independent contractor, has
       Plaintiff failed to establish a basis for liability of
       the Railroad under applicable Pennsylvania law? . . . . . . . . . . . . . . 7

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    B.   Plaintiff has failed to demonstrate sufficient facts
       upon which it may be found that, at the time of his
       alleged accident, he was an employee of the Railroad
       as required for assertion of a cause of action under the FELA. . . . . 8
    C.   As the employee of an independent contractor, Plaintiff has
       failed to establish a basis for liability of the Railroad
       under applicable Pennsylvania law. . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Page #**

**Cases:**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242,  106 S.Ct. 2505,
91 L.Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548,
91 L. Ed. 2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chicago, R.I. & P. Ry. Co. v. Bond, 240 U.S. 449, 36 S. Ct. 403, 60 L.Ed.
735 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Continental Insurance Company v. Bodie, 682 F.2d 436 (3rd Cir. 1982) . . . . . . . . 7

Denney v. CSX Transportation, Inc., 2002 WL 1340409 (E.D. Pa.) . . . . . . . . . . 15

Edwards v. Franklin & Marshall College, 444 Pa. Super. 1, 663 A.2d
187 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Felton v. SEPTA, 757 F. Supp. 623 (E.D. Pa 1981),  . . . . . . . . . . . . . . . . . . . . 9, 16

Fisher v. United States, 441 F.2d 1288 (3rd Cir. 1971) . . . . . . . . . . . . . . . . . . . . 19

Hader v. Copely Cement Manufacturing Company, 410 Pa. 139, 189
A.2d 271 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kelley v. Southern Pacific Company, 419 U.S. 318, 95 S. Ct. 472,
42 L. Ed. 2d 498  (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Lorah v. Luppold Roofing Company, Inc., 424 Pa. Super. 439,
622 A.2d 1383 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Motter v. Meadows Limited Partnership, 680 A.2d 887 (Pa. Super 1996)  . . 16, 18

Ortiz v. Ra-El-Development Corporation, 365 Pa. Super. 48, 528
A.2d 1355 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>Robinson v. B & O. R. Co.</u>, 237 U.S. 84, 35 S. Ct. 491, 59 L.Ed. 849 (1915)  . . 14

<u>Standard Oil Company v. Anderson</u>, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Tarboro v. Reading Company</u>, 396 F.2d 941 (3rd Cir. 1968) . . . . . . . . . . . . . . . 12

<u>Wabash Railroad Company v. Hayes</u>, 234 U.S. 86, 34 S. Ct. 729, 58 L. Ed. 1226 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 6

<u>Williamson v. Consolidated Rail Corporation</u>, 926 F.2d 1344 (3rd Cir. 1991) . 12

**<u>Statutes:</u>**

Federal Boiler Inspection Act, 49 U.S.C.A. §20701 . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 . . . . . . . . 6, 7, 8, 9, 12

Federal Safety Appliance Act, 49 U.S.C.A. §20301 . . . . . . . . . . . . . . . . . . . . . . . 8

**<u>Miscellaneous:</u>**

Restatement (Second) of Torts §§416 and 427 . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I.    FACTUAL HISTORY

Terry B. Wilkinson ("Wilkinson") was employed by GPS Terminal Services, Inc. ("GPS").  (Wilkinson, p.71, RFA, ¶1[1]).  GPS, under a written contract with Norfolk Southern Railway Company and formerly with Consolidated Rail Corporation (collectively referred to as the "Railroad") provides the personnel and equipment for loading and unloading of truck trailers and containers on rail cars used in intermodal transportation[2].  (Appendix, Exhibit C, Articles 2 and 3).  GPS and the Railroad are separate and distinct corporations with no common ownership.  (Third Party Complaint, ¶1, 2, 3).  The contract also provides that GPS provides it services as "an independent contractor," and that it "shall provide all qualified operating and supervisory personnel" and GPS "shall be solely responsible for employing, supervising and directing all personnel" required to perform its services.  (Appendix, Exhibit C, Articles 2.5, 10.1).   Wilkinson worked at the Harrisburg Intermodal Yard located on Industrial Road in Dauphin County, Pennsylvania.  Wilkinson had been

---

[1]References are to the separately filed Appendix of Exhibits and the depositions of T. Wilkinson dated June 10, 2002 marked as Exhibit "A" therein, the answers of GPS to the Railroad's Request for Admissions marked as Exhibit "B" therein, and the contract between GPS and the Railroad marked Exhibit "C therein.

[2]Intermodal transportation here refers to the shipment of freight, whether in containers or truck trailers, by truck and rail.

involved in intermodal transportation for GPS, and other various contractors who provided the same service at the Harrisburg Yard since 1987. (Wilkinson, p. 13).

Wilkinson was hired by GPS in 1996. (Wilkinson, p. 28). Wilkinson performed a variety of functions as an employee for GPS, including acting as a foreman, a groundman, a packer operator and a jockey truck driver. (Wilkinson, pp. 35-37). When Plaintiff would report for work, he would report to GPS' office located at the Harrisburg Yard, and report to a locker room trailer for GPS employees only to change clothes. (Wilkinson, p. 32).

On the date of his accident, June 15, 1999, he reported for work at approximately 4:00 a.m. (Wilkinson, p. 31). After changing his clothes, although he cannot recall specifically how the instructions were received, he and other GPS employees received information from the Railroad's programmer located in a separate Railroad office as to which train needed to be unloaded and which trailers were then to be subsequently reloaded onto those rail cars. (Wilkinson, pp. 32-34). Neither Wilkinson nor any other GPS employee received any further instructions from the Railroad. (Wilkinson, pp. 41, 157-158). Wilkinson was that day more than likely the "working foreman" of the GPS employees. (Wilkinson, pp. 32-35). The "working foreman" was a position assigned by GPS, not the Railroad, and he would

assign other GPS employees their duties for that day. (Wilkinson, pp. 36, 38, 157-159).

Wilkinson then began the process of unlocking the hitch mechanisms which held the trailers in place on the rail cars during shipment. (Wilkinson, pp. 42-43). The hitch is a metal mechanism which can be raised or lowered on the rail car and when in the raised position, mimics the "fifth wheel" on a truck tractor to hold the pin of the trailer in place during shipment. (Wilkinson, Exhibits 1, 2 and 5). While being shipped, the mechanism is locked so the trailer cannot move out of its position.    To unlock the hitch to remove the trailer from the rail car, Plaintiff had to insert a three foot metal rod into a rectangular receptacle on the underneath portion of the top part of the hitch to unlock the mechanism which held the pin of the trailer in place. (Wilkinson, p. 42).   Plaintiff explained that this unlocking process was done by inserting the tapered end of the metal rod into the rectangular "female" receptacle underneath the hitch and pulling towards himself in a horizontal motion in order to unlock the mechanism. (Wilkinson, pp. 44-47).   When he reached the rail car upon which he claims injury, he states that he climbed upon the rail car, bent down on his knees and jammed the rod underneath the trailer into where he believed the receptacle was. (Wilkinson, pp. 44-47). When he went to pull back on it, he states that the bar slipped out of the end causing him to fall backwards causing his injury. (Wilkinson, pp. 44-47). Prior to his alleged injury, Wilkinson states that he never saw nor looked

4

for or at the receptacle and cannot state that he indeed inserted the bar into it. (Wilkinson, pp. 55, 111-112). He states that afterwards he reached up and "felt" the mechanism and then found out that it was "flared out" to which he attributes the reason the bar came out of its position. (Wilkinson, pp. 46-47; 54-55). Wilkinson had unlocked thousands of hitches in his 14 years in intermodal work and often encountered "flared" hitches, particularly since 1989. (Wilkinson, pp. 106, 108-111, 163-164). He also was aware "flared" receptacles could cause his pry bar to come out quickly. (Wilkinson, p. 111). Afterwards, Plaintiff finished his job and shift that day. (Wilkinson, p. 78).

During this entire process, including the time in which Plaintiff was performing the tasks he said resulted in his injury, there were no Railroad employees present, giving him instructions or otherwise supervising him. (Wilkinson, pp. 56, 72-73). The only persons supervising him were GPS employees. (RFA, ¶¶3, 4, 7, 10, 12). The bar with which Plaintiff was working had been manufactured and supplied to him by GPS and not the Railroad. (Wilkinson, pp. 70-71; 118, 157-158, RFA, ¶¶6, 10). The Railroad programmer from which Plaintiff had received instructions concerning the unloading and loading of which rail cars, did not assign any of the particular jobs to any of the GPS employees nor gave any instructions or directions to them as to

how they were to perform the job or what tasks or methods to use.  (Wilkinson, pp. 72-73, 157-159; RFA, ¶¶5, 6, 7, 8, 12).

Wilkinson never reported the incident to anyone on the Railroad but reported it to Larry Heckert, a GPS supervisor.  (Wilkinson, pp. 67-68, 71).  Wilkinson filled out an injury report with GPS, not the Railroad, and indicated his employer as GPS. (Wilkinson, pp. 68-69, Exhibit 3).  At the time of his accident, Plaintiff was paid wages by GPS, not the Railroad.  (Wilkinson, p. 72; RFA, ¶9).  GPS only had the power to hire and fire Plaintiff.  (Wilkinson, pp. 161-162; RFA, ¶2).

Wilkinson filed this action asserting two causes of action.  Count I asserts a claim under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51.   Count II asserts a common law claim under Pennsylvania negligence law.   The Railroad has filed a motion for summary judgment as to both Counts.

## II.    QUESTIONS PRESENTED

**A.**    **Are there not sufficient facts upon which it may be found that, at the time of his alleged accident, Plaintiff was not an employee of the Railroad as required for assertion of a cause of action under the FELA?**

(Suggested answer in the affirmative).

**B.**    **As the employee of an independent contractor, has Plaintiff failed to establish a basis for liability of the Railroad under applicable Pennsylvania law?**

(Suggested answer in the affirmative).

## III.    ARGUMENT

### A.    Standard of Review

A party may move for summary judgment in its favor on all or any part of a claim.   Fed. R.Civ.P. 56(a).  A court must render judgment for the moving party under Rule 56(c) " . . . if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Initially, the moving party carries the burden of proving that there is no genuine issue of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed. 2d 202  (1986), Continental Insurance Company v. Bodie, 682 F.2d 436, 438 (3rd Cir. 1982).

Once the moving party has met its burden, the burden shifts to the non-moving party to show, by a preponderance of the evidence, that a fair-minded jury might enter a verdict for the non-moving party.  Anderson, 477 U.S. at 252, 106 C. Ct. at 2512. Summary judgment is mandated where the non-moving party fails to establish the elements essential to its case and bears the burden of proof with respect to those

elements at trial. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986)

As set forth below, the Railroad contends that Plaintiffs cannot sustain the burden of proving that there are genuine issues of material fact which would support a cause of action against the Railroad under either the FELA or Pennsylvania common law.

**B.    Plaintiff has failed to demonstrate sufficient facts upon which it may be found that, at the time of his alleged accident, he was an employee of the Railroad as required for assertion of a cause of action under the FELA.**

At the time of his alleged injury, Terry Wilkinson was an employee of GPS and not the Railroad, thus, he may not assert a claim under the FELA.  In Count I of his Complaint, Plaintiff has asserted a cause of action under the Federal Employers' Liability Act, 45 U.S.C. §51, as amended[3].  (Complaint, ¶2).  Unlike state common law negligence, recovery by an injured railroad worker under the FELA must strictly meet the requirements of the statute.  45 U.S.C. §51 provides, in pertinent part, as follows:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while **he is**

---

[3]Plaintiff also asserted claims under the Federal Safety Appliance Act, 49 U.S.C.A. §20301 <u>et seq.</u> and the Federal Boiler Inspection Act, 49 U.S.C.A. §20701 <u>et seq.</u>, however, he has since withdrawn those claims.

> **employed by such carrier in such commerce**, . . . due to its negligence, . . . Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce, or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purpose of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter. (emphasis supplied).

Once a Plaintiff is determined to be an employee under the provisions of the FELA, the FELA is the exclusive remedy for recovery and no other state common law or statutory remedy is permitted. Wabash Railroad Company v. Hayes, 234 U.S. 86, 89, 34 S. Ct. 729, 58 L. Ed. 1226 (1914), Felton v. SEPTA, 757 F. Supp. 623, 626-27 (E.D. Pa 1981), aff'd 952 F.2d 59 (3rd Cir. 1992). If Mr. Wilkinson is considered an employee under the FELA, he may not recover under Pennsylvania common law and, alternatively, if he is determined **not** to be an employee under the FELA, he cannot recover under its provisions. Mr. Wilkinson fails to meet any of the essential elements required under the FELA to be deemed an employee of the Railroad, thus his claim asserted under Count I of his Complaint must be dismissed.

In Kelley v. Southern Pacific Company, 419 U.S. 318, 95 S. Ct. 472, 42 L. Ed. 2d 498 (1974), the United States Supreme Court set forth the test which a plaintiff must satisfy in order to be deemed an employee within the context of 45 U.S.C. §51. The plaintiff in Kelley, who acknowledged that he was employed by a trucking

company rather than the railroad, claimed injury when he fell from the top of a tri-level railroad car where he was working.  However, he contended, as does Wilkinson here, that at the time of his accident, he "was sufficiently under the control of the railroad to bring him within the coverage of the FELA." Id., at 319, 95 S. Ct. at 474.

Kelley worked for Pacific Motor Trucking Company ("PMT") which was a wholly owned subsidiary of Southern Pacific Company.  As part of its contractual arrangement with the railroad, PMT would unload automobiles from tri-level auto carrier rail cars.  Kelley, like other PMT employees, would unhook automobiles from their place on the railroad cars and drive them into the rail yard for further placement onto PMT auto carriers for delivery to various dealers in the San Francisco area.  In a trial without a jury on the employment issue, the district court found in Kelley's favor.  The circuit court, however, reversed.  In vacating the judgment of the circuit court and remanding it to the district court for reconsideration in light of the test of employment spelled out by the Supreme Court, Justice Marshall firmly rejected the district court's analysis that a traditional agency relationship between the railroad and Kelley's employer was sufficient to create coverage under the FELA.

> . . . but this court has repeatedly required more than that to satisfy the 'while employed' clause of the FELA. From the beginning the standard has been proof of a master-servant relationship between the plaintiff and the defendant railroad. (citations omitted).

10

Id., at 323, 95 S. Ct. at 476.

Justice Marshall also found that the mere fact that Kelley's employer, PMT, may have been acting as an agent of the railroad was not sufficient to create a master-servant relationship between Kelley and the railroad and thus liability under the FELA. "The finding that the railroad was 'responsible' for the unloading operations is significantly weaker than would be a finding that it controlled or had the right to control the physical conduct of the PMT employees in the course of their unloading operations." Id., at 325, 95 S. Ct. at 477.

The key factor as announced by the Supreme Court was whether, at the time of the plaintiff's alleged injury, the railroad was exercising direct, significant supervisory control over the plaintiff so as to create a traditional master-servant relationship and thus, in turn, create liability under the FELA.

> . . . but the trial court did not find that Southern Pacific employees played a significant supervisory role in the unloading operation or, more particularly, that petitioner was being supervised by Southern Pacific employees at the time of his injury. Nor did the court find that Southern Pacific employees had any general right to control the activities of petitioner and the other PMT workers.

Id., at 327, 95 S. Ct. at 477-478.

Absent the showing of direct control and supervision, a plaintiff does not meet the required test of employment and thus cannot claim the protections of the FELA.

11

The Third Circuit Court of Appeals in <u>Tarboro v. Reading Company</u>, 396 F.2d 941 (3rd Cir. 1968), cert. denied 393 US 1027, 89 S. Ct. 637, 21 L.Ed 569 (1969), had earlier announced a similar test. In that decision, Judge Kalodner set forth the following test for determining whether a plaintiff was "employed" under the provisions of 45 U.S.C. §51:

> The primary factor to be considered in determining whether a plaintiff was employed by the defendant is whether the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured. Relevant factors to be considered are: who selected and engaged the plaintiff to do the work; who paid his wages for performing it; who had the power to terminate his employment; who furnished the tools with which the work was performed and the place of work.

<u>Id</u>., at 943. See also, <u>Williamson v. Consolidated Rail Corporation</u>, 926 F.2d 1344, 1350 (3rd Cir. 1991), (employee of trucking company which was wholly owned subsidiary of railroad determined to be employee of railroad for FELA purposes when he was performing work outside the normal work requested of him and an employee of the railroad was in his direct presence and directly supervising his work at the time of his injury, 926 F. 2d at 1351-52). Under this test as set forth by both the Third Circuit and the United States Supreme Court, the uncontradicted evidence here demonstrates that Plaintiff was an employee of GPS at the time of his accident and not of the Railroad.

12

Wilkinson was hired by GPS, not the Railroad.  His wages were paid by GPS, not the Railroad.  He reported for work to GPS' office and changed clothes in the GPS locker room. At the time of his accident, he, more than likely, was the GPS "working foreman" supervising and assigning the work of other GPS employees. GPS and not the Railroad possessed the right to discipline him and to terminate his employment.  Although Wilkinson and the other members of the GPS crew on duty that morning received instructions from a Railroad employee as to which cars were to be unloaded and loaded, that employee exercised no direct supervision or control over them as to how they performed the work, where they started in the performance of their work, what equipment they used or which personnel were assigned to perform which tasks.   That was all determined and supplied solely by GPS and its personnel under its contract with the Railroad. In fact GPS' contract with the Railroad specifically provides that it is an independent contractor and that it "shall provide all qualified operating and <u>supervisory</u> personnel . . . for efficient performance of the Terminal services . . . ." and be "solely responsible" for their supervision and direction.

As Justice Marshall stated in <u>Kelley</u>, the mere exchange of information between the railroad and Plaintiff's employer for purposes of performing the work necessary is not sufficient, in and of itself, to create an employment relationship.  The

13

exchange of such information is necessary for each company to perform the various

tasks assigned to them.

> . . . The evidence of contacts between Southern Pacific
> employees and PMT employees may indicate, not direction
> or control, but rather the passing of information and the
> accommodation that is obviously required in a large and a
> necessarily coordinated operation.  See <u>DelVecchio v.
> Pennsylvania Railroad Company</u>, 233 F.2d 2, 5 (3rd Cir.
> 1956).  The informal contacts between the two groups must
> assume a supervisory character before the PMT employees
> can be deemed *pro hac vice* employees of the railroad.

<u>Kelley</u>, at 330, 95 S. Ct. at 479.

The Court, citing <u>Standard Oil Company v. Anderson</u>, 212 U.S. 215, 29 S.Ct. 252, 53

L.Ed. 480 (1909), indicated that emphasis must be placed upon "the importance of

distinguishing between authoritative direction and control, and a mere suggestion as

to details or the necessary cooperation, where the work furnished is part of a larger

undertaking."  <u>Id</u>. at 329, 95 S.Ct. at 479.   In accord see <u>Robinson v. B & O. R. Co.</u>,

237 U.S. 84, 35 S. Ct. 491, 59 L.Ed. 849 (1915) (porter in charge of Pullman car

hauled by B & O <u>not</u> B & O employee), <u>Chicago, R.I. & P. Ry. Co. v. Bond</u>, 240 U.S.

449, 36 S. Ct. 403, 60 L.Ed. 735 (1916) (employee of coal company <u>not</u> railroad

employee even though railroad directed activities to some extent), <u>Denney v. CSX

Transportation, Inc.</u>, 2002 WL 1340409 (E.D. Pa.) (employee of company retained

by railroad to unload automobiles from rail cars <u>not</u> railroad employee for FELA purposes). Copy of Opinion attached.

Plaintiff here cannot demonstrate any of the necessary facts evidencing the requisite supervision or control to support a claim that meets the test of "employed" under the FELA. He, therefore, cannot assert a viable claim under its provisions and Count I of his Complaint must be dismissed and the Railroad's Motion for Summary Judgment as to Count I must be granted.

**C.     As the employee of an independent contractor, Plaintiff has failed to establish a basis for liability of the Railroad under applicable Pennsylvania law.**

In Count II of their Complaint, Plaintiffs assert Pennsylvania common law negligence claim against the Railroad for injuries suffered by Mr. Wilkinson and a derivative claim of loss of consortium by Mrs. Wilkinson. Plaintiffs assert negligence arising from the Railroad's ownership, possession, maintenance, operation or control of the rail car upon which he claims injury, particularly with regard to the hitch mechanism located on the rail car. However, as the employee of an independent contractor, the Railroad owed no duty to Terry Wilkinson for which he may assert a cause of action for negligence, thus his and the derivative claim of his wife must both

fail and the Railroad is entitled to summary judgment in its favor and against

Plaintiffs as to the claims set forth in Count II of their Complaint.[4]

Pennsylvania law regarding the narrow and limited duty owed by one

employing the services of an independent contractor is quite clear.  As a general rule,

". . . the employer of an independent contractor is not liable for the physical harm

caused another by the act or omission of the contractor or his servant . . . ."  Motter

v. Meadows Limited Partnership, 680 A.2d 887 (Pa. Super 1996).

> . . . An owner of land who delivers temporary possession
> of a portion of the land to an independent contractor owes
> no duty to the employees of the independent contractor
> with respect to an obviously dangerous condition of that
> portion of the land in the possession of the contractor . . .
> an independent contractor is in possession of the necessary
> area occupied by the work contemplated under the contract
> and his responsibility replaces that of the owner who is,
> during the performance of the work by the contractor, out
> of possession and without control over the work or the
> premises.

---

[4]If the Court finds that Plaintiff was an employee of the Railroad under the
requirements of the FELA, Plaintiffs common law negligence claims must be
dismissed as the FELA is the exclusive remedy under those circumstances.
Wabash Railroad Company v. Hayes, 234 U.S. 86, 34 S. Ct. 729, 58 L. Ed. 1226
(1914), Felton v. SEPTA, 757 F. Supp. 623 (E.D. Pa 1981), aff'd 952 F.2d 59 (3rd
Cir. 1992).

Hader v. Copely Cement Manufacturing Company, 410 Pa. 139, 151, 189 A.2d 271, 277 (1963), Ortiz v. Ra-El-Development Corporation, 365 Pa. Super. 48, 528 A.2d 1355 (1987), alloc. denied, 517 Pa. 608, 536 A.2d 1332 (1987).

There are only two exceptions to this rule. First, the rule does not apply when the property owner "retains significant control over the work delegated to the contractor." Lorah v. Luppold Roofing Company, Inc., 424 Pa. Super. 439, 442, 622 A.2d 1383, 1384 (1993). This exception does not apply, as, other than giving the GPS employees instructions as to which cars were to be loaded and unloaded, the railroad retained no control over the cars or the premises while Wilkinson performed his job, the manner in which the work was performed, the tools used, the workers assigned or which duties they performed, or the use made of the rail cars and premises by GPS while providing its services.

The second exception is what has been come to know as the "special danger" or "peculiar risk" exception. These exceptions are embodied in Pennsylvania's adoption of the Restatement (Second) of Torts §§416 and 427. However, these exceptions to the general rule of an employer's liability are to be narrowly construed.

Edwards v. Franklin & Marshall College, 444 Pa. Super. 1, 7, 663 A.2d 187, 190 (1995).[5] Regardless, Plaintiff here is unable to fit his alleged accident within the nature of a peculiar risk or special danger and, thus, he may not recover under Pennsylvania common law against the Railroad.

A "peculiar risk" or "special danger"

> [must be] recognizable in advance and contemplated by the employer [of the independent contractor] at the time the contract was formed . . . and . . . it must not be a risk created solely by the contractor's 'collateral negligence' . . . [i.e.] negligence consisting wholly of the improper manner in which the contractor perform[ed] the operative details of the work.

Motter v. Meadows Limited Partnership, 680 A.2d at 890.

The Superior Court has fashioned a two-part test to be applied in determining whether a given risk is peculiar or a special danger. The two prongs to be applied are (1) "was the risk foreseeable to the employer of the independent contract at the time the contract was executed and, (2) was the risk different from the ususal and ordinary risk associated with the general type of work done, i.e. does the specific project or task chosen by the employer invoke circumstances that are substantially out of the

---

[5]Judge Cavanaugh in his Concurring Opinion in Ortez v. Ra-El Development Corp., supra, has stated his opinion that these Restatement sections provide a basis of recovery by third persons only, not employees of independent contractors or subcontractors. 528 A.2d at 1360.

18

ordinary?" <u>Motter v. Meadows Limited Partnership</u>, <u>supra</u>. A close reading of the test reveals that the risk must be different from the risks normally attendant with the employee's regular duties.

Where the accident occurs while an employee of an independent contractor is performing his usual and customary duties, however, the peculiar risk doctrine is not applicable. <u>Lorah v. Luppold Roofing Company</u>, 424 Pa. Super. 439, 622 A.2d 1383 (1993), <u>Edwards v. Franklin & Marshall College</u>, 444 Pa. Super. 1, 663 A.2d 187, (1995), <u>Fisher v. United States</u>, 441 F.2d 1288 (3rd Cir. 1971).

Plaintiff here can point to no evidence that the event or circumstances which caused his accident were either extraordinary or involved a peculiar risk or a special danger. The type of work that Mr. Wilkinson was performing naturally involves some type of risk or danger. Working around railroads, rail cars and truck trailers would inherently involve risk of injury. Wilkinson admits that his daily duties involved the unlocking of hundreds of hitches and that he had done it thousands of times during his career in exactly the same way, using exactly the same tools and that he had even been involved with hitches that had had defects of the types he claims existed here. More telling, however, is the fact that Plaintiff at no time took the opportunity to actually observe the mechanism he was working on to determine whether or not it was indeed fit for the purpose of unlocking. Instead he blindly

jammed the steel rod into the area he believed to be correct and, **after the accident occurred**, then claimed to "feel the female receptacle" and determined that it was "flared out" and that is what caused the accident.

It must also be remembered that Wilkinson, as an employee of GPS, was working as an independent contractor under the terms of a specific written contract between GPS and the Railroad which specifically provided that the work was being done as independent contractor with GPS supplying the necessary personnel and supervision. (Appendix, Exhibit C, Articles 2.5 and 10.1). The very nature of the work being performed, that is the unlocking of the hitches in order to permit the unloading of truck trailers from rail cars, was specifically the type .of work contemplated by the contract for which GPS had been retained as an independent contractor. (Appendix, Exhibit C, Articles 2 and 3). It must also be recalled, that the duties and tasks being performed by Wilkinson had been assigned to him by GPS, (RFA, ¶¶5, 8) with tools supplied to him exclusively by GPS (RFA, ¶6), and, most telling, was a total lack of any Railroad personnel in the area before, during or after his alleged accident. Although Plaintiff may contend that the Railroad controlled the rail yard and the transportation of the car involved, this alone is insufficient to create liability on the part of the Railroads. In fact, at the time of the alleged accident, it was GPS and its employee, Terry Wilkinson, who actually controlled the "premises"

where the accident occurred.    To accept Plaintiffs' argument would render the concepts of liability between an employer and an independent contractor meaningless. See, Edwards, supra, at 6, 663 A.2d at 190-191.

Thus, Plaintiffs cannot present material facts which would create a jury issue as to whether he falls within the two narrow exceptions to the general rule that the employer of an independent contractor owes no duty to the employees of that contractor. Thus, Count II of Plaintiffs' Complaint must fail, and summary judgment should be entered in favor of Norfolk Southern and Conrail as to Plaintiffs' claims set forth in Count II of their Complaint.

## IV.    CONCLUSION

For the reasons set forth in the argument above, Norfolk Southern Railway Company and Consolidated Rail Corporation, Defendants, respectfully move this Court for summary judgment in their favor and against Terry B. Wilkinson and Sharon Wilkinson as to the claims set forth in Counts I and II of their Complaint.

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____

**Craig J. Staudenmaier, Esquire**
**Supreme Court ID# 34996**
200 North Third Street, P. O. Box 840
Harrisburg, PA  17108-0840
Telephone:  (717) 236-3010
Counsel for Norfolk Southern Railway
Company and Consolidated Rail
Date: July 15, 2002                Corporation, Defendants

21

## CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)(2)

The undersigned counsel does hereby certify pursuant to Middle District Local Rule 7.8(b)(2) that the foregoing Brief, although exceeding fifteen (15) pages in length, does not exceed 5000 words in length pursuant to the word processing word count as follows:

Word Count pursuant to WordPerfect          4757

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
     Craig J. Staudenmaier, Esquire
     Supreme Court ID# 34996

Date: July 15, 2002

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1340409 (E.D.Pa.))

Page 5

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Frederick A. DENNEY,
v.
CSX TRANSPORTATION, INC.

No. CIV.A. 01-4520.

June 20, 2002.

*MEMORANDUM*

Padova, J.

**\*1** Plaintiff, Frederick A. Denney, brought this action against CSX Transportation, Inc. ("CSX") under the Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. §§ 51-60 (West 1986) (Count I) and common law (Count II) for personal injuries allegedly sustained within the scope of his employment at the Twin Oaks Railyard [FN1], near Aston, Delaware County, Pennsylvania. Before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

> FN1. The railyard where Plaintiff was employed is referred to by Defendant's witnesses as both the Twin Oaks Railyard and the Aston Railyard.

I. BACKGROUND

Plaintiff was employed by Auto Rail Services of Pennsylvania, Inc., d/b/a/ Auto Resources Group-Pennsylvania ("ARG") to unload automobiles from railcars at the Twin Oaks Railyard. (DiGiacomo Aff. at 1.) He was injured on June 28, 2000, when he slipped on grease inside the middle deck of a tri-level railcar and fell onto the knuckle of the railcar. (Denney Dep. at 81-82, 107-108.) The accident occurred while Plaintiff was hanging deck plates on the top deck of the railcar. (*Id.*) Plaintiff believes that the type of grease he slipped on is used to grease the channels on the track of the railcar door. (*Id.* at 100, 111-12.)

II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non- moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. *Callahan v. AEV, Inc.,* 182 F.3d 237, 252 n. 11 (3d Cir.1999)(citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993)). The Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255. However, "mere allegations, bare assertions or suspicions are not sufficient to defeat a motion for summary judgment." *Felton v. Southeastern Penn. Transp. Auth.,* 757 F.Supp. 623, 626 (E.D.Pa.1991) (citation omitted).

III. DISCUSSION
  **\*2** A. *FELA*

In order to succeed in an action under FELA, Plaintiff must establish the following four elements: 1) defendant is a common carrier; 2) he was employed by defendant; 3) his injury occurred while he was employed by defendant; and 4) defendant's negligence caused his injuries. [FN2] *Felton v. Southeastern Penn. Transp. Auth.,* 952 F.2d 59, 62 (3d Cir.1991). CSX argues that it is entitled to

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 1340409, \*2 (E.D.Pa.))**

summary judgment on Plaintiff's claim pursuant to FELA because it was not Plaintiff's employer. Plaintiff admits that he was employed by ARG, but claims that he was also employed by CSX for purposes of FELA. (Compl.¶ 10.)

> FN2. There is a relaxed standard of proof of negligence for FELA claims. *Hines v. Consol. Rail Corp.,* 926 F.2d 262, 268 (3d Cir.1991) (citation omitted) ("[a] trial court is justified in withdrawing issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee."). However, the other elements of a FELA claim, including employment, are not subject to relaxed standards of proof. *See Fulk v. Illinois Cent. R. Co.,* 22 F.3d 120, 124 (7th Cir.1994).

The Supreme Court has determined that a plaintiff may prove that he was employed by a rail carrier for purposes of FELA while nominally employed by another employer in three ways:

> First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. *See* Restatement (Second) of Agency § 227; *Limstead v. Chesapeake & Ohio R. Co.,* 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). Second, he could be deemed to be acting for two masters simultaneously. *See* Restatement § 226; *Williams v. Pennsylvania R. Co.,* 313 F.2d 203, 209 (2d Cir.1963). Finally, he could be a subservant of a company that was in turn a servant of the railroad. *See* Restatement § 5(2); *Schroeder v. Pennsylvania R. Co.,* 397 F.2d 452 (7th Cir.1968).

*Kelley v. Southern Pacific Co.,* 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). The United States Court of Appeals for the Third Circuit has determined that the following factors should be used to determined whether a plaintiff is employed by a rail carrier as well as a nominal employer pursuant to *Kelley:*

> The primary factor to be considered in determining whether a plaintiff was employed by the defendant [under the Act] is whether the latter had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured. Relevant factors to be considered are: who selected and engaged the plaintiff to do the work; who paid his wages for performing it; who had the power to terminate his employment; who furnished the tools with which the work was performed and the place of work.

*Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1350 (3d Cir.1991) (citing *Tarboro v. Reading Co.,*

396 F.2d 941, 943 (3d Cir.1968)).

Plaintiff asserts that he was employed by CSX based upon his belief that his supervisor, Jim Azpell, is employed by CSX. (Denney Dep. at 57-58.) [FN3] However, Jim Azpell, Plaintiff's immediate supervisor, is an employee of ARG. (DiGiacomo Aff. at 1; Azpell Aff. at 1.) Mr. Azpell has provided an Affidavit in which he states the following: ARG employed Plaintiff to perform unloading of automobiles from rail cars at the Aston (Twin Oaks) Railyard. (Azpell Aff. at 1.) Mr. Azpell and other ARG personnel supervised the manner and performance of Plaintiff's job. (*Id.*) Plaintiff reported to Azpell and other ARG managers/supervisors in the performance of his duties. (*Id.*) ARG conducted safety and training sessions to instruct Plaintiff in the performance of his job. (*Id.*) ARG provided Plaintiff with all tools necessary to complete the performance of his job. (*Id.* at 2.) ARG paid Plaintiff in connection with his employment. (*Id.*) Plaintiff receives worker's compensation benefits in connection with his injuries which are attributable to ARG. (*Id.*) Mr. Azpell also states in his Affidavit that CSX never directed Plaintiff's employment or the manner in which his duties were performed. (*Id.*) CSX has also submitted the affidavit of Dennis Kilar, Assistant General Manager of Total Distribution Services, Inc. ("TDSI") which leases the Twin Oaks Railyard from CSX. (Kilar Aff. at 1, Def. Ex. B.) Mr. Kilar states that TDSI contracted with ARG to provide personnel and services, including the unloading of vehicles from railcars brought to the Twin Oaks Railyard. (*Id.*) CSX's only activity at that site is the transporting of automobiles in sealed railcars to the Railyard. (*Id.*) CSX locomotives transport sealed railcars to the yard and leave the railcars on side tracks for unloading. (*Id.*) ARG employees then unload the automobiles from the railcars. (*Id.*) Once the cars are unloaded, CSX locomotives return and remove the empty railcars. (*Id.*) Mr. Kilar also stated in his affidavit that CSX did not have any employees at this railyard who participate in, or supervise, the unloading of vehicles from the railcars. (*Id.*) Those duties are performed by ARG employees, in accordance with its contract with TDSI. (*Id.*)

> FN3. Plaintiff does not cite any facts in support of this belief, and he has not submitted any evidence which would support this belief. Moreover, he has admitted that he was never given any orders by anyone wearing a CSX uniform. (Denney Dep. at 67.)

The uncontroverted evidence in the record before the

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1340409, *2 (E.D.Pa.))

Court shows that ARG directed, controlled and supervised the Plaintiff in the performance of his work at the time he was injured. *See Williamson*, 926 F.2d at 1350. ARG hired and paid Plaintiff to unload automobiles from railcars at the Twin Oaks Railyard, trained Plaintiff and supervised his work, and provided the tools he used for his work. CSX did not supervise Plaintiff's work and did not have any employees involved in any way with the unloading of automobiles from railcars at the Twin Oaks Railyard. Plaintiff has adduced no evidence to support his contention that he was employed by CSX for purposes of his FELA claim. Therefore, the Court finds that Plaintiff has not established a genuine issue of material fact as to this issue and grants CSX's Motion for Summary Judgment on Count I.

B. *Negligence*

*3 Count II of the Complaint alleges a claim against CSX for negligence under Pennsylvania common law. In order to succeed in an action for negligence under common law, a plaintiff "must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa.Super.Ct.2000). Defendant argues that it is entitled to summary judgment on Plaintiff's negligence claim because it did not owe a duty of care to Plaintiff.

Plaintiff asserts, for purposes of Count II, that he was a business invitee of CSX and that CSX, as the owner of the railcar from which he fell, owed him a duty to make the railcar safe for his use or give him timely and adequate warning of the dangerous conditions within the railcar. (Pl.'s Mem. at 7.) Plaintiff relies on his bare assertion that the railcar from which he fell belongs to CSX. (Denney Dep. at 158.) He admits that he did not see a CSX designation anywhere on that railcar. (*Id.*)

CSX has submitted evidence that the railcar from which Plaintiff fell, number ETTX950183, is owned by Norfolk Southern Railroad, including photographs of railcar ETTX950183 which show the words "Norfolk Southern" prominently displayed on the side of the railcar, directly above the serial number. (Kilar Aff. at 2, Def.'s Ex. G.) CSX has also submitted uncontroverted evidence that the railcars it transports

to the Twin Oaks Railyard are sealed before and during their transportation by CSX and that it does not load or unload those railcars. (*Id.* at 1-2.)

A railroad transporting loaded railcars from a connecting carrier to a consignee owes a duty to that consignee to make an inspection "sufficiently thorough to ascertain whether there is any *fairly obvious defect* in its construction or state of repair which constitutes a likely source of danger." *Ambrose v. Western Maryland Ry. Co.*, 368 Pa. 1, 81 A.2d 895, 898 (Pa.1951) (italics in original). That duty requires the railcarrier to conduct "an inspection from the ground, the inspector walking around the car and looking at the running gear, brake rigging and visual inspection of the body of the car and its doors." *Id.* The railcarrier does not have a duty to break the seal on the railcar and inspect the inside of the railcar for dangerous conditions. *See Dagostine v. Joseph Schlitz Brewing Co.*, 478 F.Supp. 38, 41 (E.D.Pa.1979).

The uncontroverted evidence before the Court is that the dangerous condition which caused Plaintiff's injuries was inside the railcar, which was owned by the Norfolk Southern Railroad. CSX, as a carrier of loaded railcars to a consignee of the railcars, namely ARG, had no duty to unseal that railcar and inspect the inside for, and warn Plaintiff of, any dangerous condition existing inside of the railcar. Since the source of Plaintiff's injury lies outside of the duty of care owed by CSX to Plaintiff, CSX's Motion for Summary Judgment is granted as to Count II of the Complaint.

*4 An appropriate order follows.

### ORDER

AND NOW, this 19th day of June, 2002, in consideration of Defendant's Motion for Summary Judgment (Docket No. 26) and Plaintiff's response thereto, IT IS HEREBY ORDERED that the Motion is GRANTED pursuant to Federal Rule of Civil Procedure Rule 56 and JUDGMENT is entered in favor of Defendant and against Plaintiff.

2002 WL 1340409 (E.D.Pa.)

END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRY BOYD WILKINSON and | : | CIVIL ACTION |
| SHARON WILKINSON, husband | : | |
| and   wife, | : | |
|       Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| NORFOLK SOUTHERN RAILWAY | : | |
| COMPANY and CONSOLIDATED | : | JUDGE SYLVIA H. RAMBO |
| RAIL CORPORATION, | : | |
|       Defendants | : | |
| | : | NO. 01-CV-1146 |
| v. | : | |
| | : | |
| GPS TERMINAL SERVICES, INC., | : | |
|       Third Party Defendant | : | |

## CERTIFICATE OF SERVICE

**AND NOW**, on the date stated below, I, **Craig J. Staudenmaier, Esquire**, of the firm of Nauman, Smith, Shissler & Hall, LLP,  hereby certify that I this day served the foregoing  **BRIEF OF NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** by depositing a copy of the same in the United States Mail, first class, postage prepaid, at Harrisburg, Pennsylvania, and hand delivery, addressed to the following:

Lawrence A. Katz, Esquire
Robert E. Myers, Esquire

23

**COFFEY & KAYE**
Two Bala Plaza, Suite 718
Bala Cynwyd, PA  19004
First Class, Postage Prepaid

Jeffrey B. Rettig, Esquire
Hartman, Osborne & Rettig, P.C.
126-128 Walnut Street
Harrisburg, PA 17101
Via Hand Delivery

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
     **Craig J. Staudenmaier, Esquire**
     **Supreme Court ID# 34996**

Date:  July 15, 2002

24