ORIGINAL

2 to cl

FILED
HARRISBURG, PA

JUL 1 5 2002

MARY E. D'ANDREA, CLERK
Per _____

21
7/16/02

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY BOYD WILKINSON and SHARON WILKINSON, husband and wife, | : CIVIL ACTION |
|        Plaintiffs | : |
| | : |
|        v. | : |
| | : JURY TRIAL DEMANDED |
| NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION, | : |
| | : JUDGE SYLVIA H. RAMBO |
|        Defendants | : |
| | : NO. 01-CV-1146 |
|        v. | : |
| | : |
| GPS TERMINAL SERVICES, INC., | : |
|        Third Party Defendant | : |

**NORFOLK SOUTHERN RAILWAY COMPANY AND
CONSOLIDATED RAIL CORPORATION STATEMENT OF
UNDISPUTED FACTS PURSUANT
TO MIDDLE DISTRICT LOCAL RULE 56.1**

1.      Terry B. Wilkinson ("Wilkinson") was employed by GPS Terminal Services, Inc. ("GPS").  (Wilkinson, p.71, RFA, ¶1[1]).

2.      GPS, under a written contract with Norfolk Southern Railway Company and formerly with Consolidated Rail Corporation (collectively referred to as the "Railroad") provides the personnel and equipment for loading and unloading of truck trailers and containers on rail cars used in intermodal transportation[2].  (Appendix, Exhibit C, Articles 2 and 3).

3.      GPS and the Railroad are separate and distinct corporations with no common ownership.   (Third Party Complaint ¶1, 2, 3).

4.      The contract also provides that GPS provides it services as "an independent contractor," and that it "shall provide all qualified operating and supervisory personnel" and GPS "shall be solely responsible for employing, supervising and directing all personnel" required to perform its services. (Appendix, Exhibit C, Articles 2.5, 10.1).

---

[1]References are to the separately filed Appendix of Exhibits and the depositions of T. Wilkinson dated June 10, 2002 marked as Exhibit "A" therein, the answers of GPS to the Railroad's Request for Admissions marked as Exhibit "B" therein, and the contract between GPS and the Railroad marked Exhibit "C therein.

[2]Intermodal transportation here refers to the shipment of freight, whether in containers or truck trailers, by truck and rail.

5.      Wilkinson worked at the Harrisburg Intermodal Yard located on Industrial Road in Dauphin County, Pennsylvania.

6.      Wilkinson had been involved in intermodal transportation for GPS, and other various contractors who provided the same service at the Harrisburg Yard since 1987.  (Wilkinson, p. 13).

7.      Wilkinson was hired by GPS in 1996.  (Wilkinson, p. 28).

8.      Wilkinson performed a variety of functions as an employee for GPS, including acting as a foreman, a groundman, a packer operator and a jockey truck driver.  (Wilkinson, pp. 35-37).

9.      When Plaintiff would report for work, he would report to GPS' office located at the Harrisburg Yard, and report to a locker room trailer for GPS employees only to change clothes.  (Wilkinson, p. 32).

10.     On the date of his accident, June 15, 1999, he reported for work at approximately 4:00 a.m.  (Wilkinson, p. 31).

11.     After changing his clothes, although he cannot recall specifically how the instructions were received, he and other GPS employees received information from the Railroad's programmer located in a separate Railroad office as to which train needed to be unloaded and which trailers were then to be subsequently reloaded onto those rail cars.  (Wilkinson, pp. 32-34).

12.    Neither Wilkinson nor any other GPS employee received any further instructions from the Railroad.  (Wilkinson, pp. 41, 157-158).

13.    Wilkinson was that day more than likely the "working foreman" of the GPS employees.  (Wilkinson, pp. 32-35).

14.    The "working foreman" was a position assigned by GPS, not the Railroad, and he would assign other GPS employees their duties for that day. (Wilkinson, pp. 36, 38, 157-159).

15.    Wilkinson then began the process of unlocking the hitch mechanisms which held the trailers in place on the rail cars during shipment.  (Wilkinson, pp. 42-43).

16.    The hitch is a metal mechanism which can be raised or lowered on the rail car and when in the raised position, mimics the "fifth wheel" on a truck tractor to hold the pin of the trailer in place during shipment. (Wilkinson, Exhibits 1, 2 and 5).

17.    While being shipped, the mechanism is locked so the trailer cannot move out of its position.

18.    To  unlock the hitch to remove the trailer from the rail car, Plaintiff had to insert a three foot metal rod into a rectangular receptacle on the underneath portion

of the top part of the hitch to unlock the mechanism which held the pin of the trailer in place. (Wilkinson, p. 42).

19.     Plaintiff explained that this unlocking process was done by inserting the tapered end of the metal rod into the rectangular "female" receptacle underneath the hitch and pulling towards himself in a horizontal motion in order to unlock the mechanism. (Wilkinson, pp. 44-47).

20.     When he reached the rail car upon which he claims injury, he states that he climbed upon the rail car, bent down on his knees and jammed the rod underneath the trailer into where he believed the receptacle was. (Wilkinson, pp. 44-47).

21.     When he went to pull back on it, he states that the bar slipped out of the end causing him to fall backwards causing his injury. (Wilkinson, pp. 44-47).

22.     Prior to his alleged injury, Wilkinson states that he never saw nor looked for or at the receptacle and cannot state that he indeed inserted the bar into it. (Wilkinson, pp. 55, 111-112).

23.     He states that afterwards he reached up and "felt" the mechanism and then found out that it was "flared out" to which he attributes the reason the bar came out of its position. (Wilkinson, pp. 46-47; 54-55).

24.    Wilkinson had unlocked thousands of hitches in his 14 years in intermodal work and often encountered "flared" hitches, particularly since 1989. (Wilkinson, pp. 106, 108-111, 163-164).

25.    He also was aware "flared" receptacles could cause his pry bar to come out quickly. (Wilkinson, p. 111).

26.    Afterwards, Plaintiff finished his job and shift that day. (Wilkinson, p. 78).

27.    During this entire process, including the time in which Plaintiff was performing the tasks he said resulted in his injury, there were no Railroad employees present, giving him instructions or otherwise supervising him. (Wilkinson, pp. 56, 72-73).

28.    The only persons supervising him were GPS employees. (RFA, ¶¶3, 4, 7, 10, 12).

29.    The bar with which Plaintiff was working had been manufactured and supplied to him by GPS and not the Railroad. (Wilkinson, pp. 70-71; 118, 157-158, RFA, ¶¶6, 10).

30.    The Railroad programmer from which Plaintiff had received instructions concerning the unloading and loading of which rail cars, did not assign any of the particular jobs to any of the GPS employees nor gave any instructions or directions

to them as to how they were to perform the job or what tasks or methods to use. (Wilkinson, pp. 72-73, 157-159; RFA, ¶¶5, 6, 7, 8, 12).

31.    Wilkinson never reported the incident to anyone on the Railroad but reported it to Larry Heckert, a GPS supervisor.    (Wilkinson, pp. 67-68, 71).

32.    Wilkinson filled out an injury report with GPS, not the Railroad, and indicated his employer as GPS.  (Wilkinson, pp. 68-69, Exhibit 3).

33.    At the time of his accident, Plaintiff was paid wages by GPS, not the Railroad.  (Wilkinson, p. 72; RFA, ¶9).

34.    GPS only had the power to hire and fire Plaintiff.  (Wilkinson, pp. 161-162; RFA, ¶2).

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
Craig J. Staudenmaier, Esquire
Supreme Court ID# 34996

200 North Third Street, P. O. Box 840
Harrisburg, PA  17108-0840
Telephone:  (717) 236-3010
Counsel for Norfolk Southern Railway
Company and Consolidated Rail
Corporation, Defendants

Date: July 15, 2002

7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY BOYD WILKINSON and    :    CIVIL ACTION
SHARON WILKINSON, husband    :
and    wife,    :
          Plaintiffs    :
   :
      v.    :
   :    JURY TRIAL DEMANDED
NORFOLK SOUTHERN RAILWAY    :
COMPANY and CONSOLIDATED    :    JUDGE SYLVIA H. RAMBO
RAIL CORPORATION,    :
          Defendants    :
   :    NO. 01-CV-1146
      v.    :
   :
GPS TERMINAL SERVICES, INC.,    :
      Third Party Defendant    :

## CERTIFICATE OF SERVICE

**AND NOW**, on the date stated below, I, **Craig J. Staudenmaier, Esquire**, of the firm of Nauman, Smith, Shissler & Hall, LLP, hereby certify that I this day served the foregoing **NORFOLK SOUTHERN RAILWAY COMPANY AND CONSOLIDATED RAIL CORPORATION, DEFENDANTS, STATEMENT OF UNDISPUTED FACTS** by depositing a copy of the same in the United States Mail, first class, postage prepaid, at Harrisburg, Pennsylvania, addressed to the following:

Lawrence A. Katz, Esquire
Robert E. Myers, Esquire
**COFFEY & KAYE**
Two Bala Plaza, Suite 718
Bala Cynwyd, PA  19004

Jeffrey B. Rettig, Esquire
Hartman, Osborne & Rettig, P.C.
126-128 Walnut Street
Harrisburg, PA  17101

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
**Craig J. Staudenmaier, Esquire**
**Supreme Court ID# 34996**

200 North Third Street, P. O. Box 840
Harrisburg, PA  17108-0840
Telephone:  (717) 236-3010
Counsel for Norfolk Southern Railway
Company and Consolidated Rail
Corporation, Defendants

Date: July 15, 2002

9