**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TERRY BOYD WILKINSON, ET AL  :
                                                         :
   PLAINTIFFS                :
                                                         :    CIVIL ACTION NO.
   VS.                                      :
                                                         :    01-CV-1146
NORFOLK SOUTHERN CORP., ET AL. :
                                                         :    HON. SYLVIA H. RAMBO
                                                         :
   DEFENDANTS             :

**PLAINTIFF'S REPLY IN OPPOSITION TO
NORFOLK SOUTHERN CORPORATION'S
LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

1.    Admitted.

2.    Admitted.

3.    Admitted.

4.    It is admitted that these phrases are contained in the contract. It is denied that these legal representations are dispositive of the issue of whether Mr. Wilkinson is an "employee" for purposes of the FELA. That issue is determined by reviewing the facts of the case and not simply by reading a legal document. The issue of status as FELA "employee" is controlled by federal law and not by contract.

1

5. Admitted that Mr. Wilkinson worked at the Railroad's Harrisburg intermodal yard.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. It is generally admitted that the Railroad's "programmer" provided Mr. Wilkinson and his co-workers information and instructions concerning where, when and what work was to be performed.

12. Denied. The Railroad provided Mr. Wilkinson and other employees with detailed safety and instructional films. (See e.g., Wilkinson Dep. at 28) Also, Mr. Wilkinson and his co-workers were required to wear safety clothing and markings per the Railroad's requirements. (Wilkinson Dep. at 155-156)

13. Denied. There was no GPS foreman on the job. All of the employees shared the necessary duties for the day. (Wilkinson Dep. at 38)

14. Denied. There was no GPS foreman on the job. All of the employees shared the necessary duties for the day. (Wilkinson Dep. at 38)

15. Admitted.

16.   Admitted.

17.   Admitted.

18.   Admitted.

19.   Admitted.

20.   Denied as stated. Mr. Wilkinson placed the bar into the female latch receptacle. Although the location of the equipment did not allow him to actually see whether the bar had been inserted into the latch, his experience allowed him to determine that it was properly inserted. (Wilkinson Dep. at 46-47)

21.   Denied as stated. The bar did not slip out of the receptacle, but "popped" out. The resulting momentum threw Mr. Wilkinson and required that he grab onto the car to prevent himself from being off of the car. While doing so he experienced extreme shoulder and arm pain. (Wilkinson Dep. at 47, 53-54)

22.   Denied as stated. Although the location of the equipment did not allow him to actually see whether the bar had been inserted into the latch, his experience allowed him to determine that it was properly inserted. (Wilkinson Dep. at 46-47)

23.   Admitted that Mr. Wilkinson had often encountered "flared" receptacles. The reason for this is that the Railroad stopped having its Car

3

Inspectors inspect, oil, grease and otherwise maintain them. This permitted the receptacles to deteriorate into a state of chronic disrepair. (Wilkinson Dep. at 105-106)

24. Admitted that Mr. Wilkinson had often encountered "flared" receptacles. The reason for this is that the Railroad stopped having its Car Inspectors inspect, oil, grease and otherwise maintain them. This permitted the receptacles to deteriorate into a state of chronic disrepair. (Wilkinson Dep. at 105-106)

25. Admitted that because the Railroad stopped maintaining the cars and their hitches and receptacles, Mr. Wilkinson knew that there were flared receptacles that would not function properly while he was trying to open them.

26. Admitted, although he was in pain. (Wilkinson Dep. at 53-54)

27. It is admitted that no supervisors, of any kind, were present at the time of his accident. The Railroad programmer had previously provided the details of this work assignment to Mr. Wilkinson. (Wilkinson Dep. at 32-41, 122, 139-140)

28. Denied. The Railroad programmer had previously provided the details of this work assignment to Mr. Wilkinson. (Wilkinson Dep. at 32-41, 122, 139-140)

4

29. Admitted, although the railcar was owned and/or controlled by the Railroad. (Wilkinson Dep. at 107-109)

30. Denied as stated. The Railroad programmer provided details of what work was to be performed, when it was to be performed and where it was to be performed. (Wilkinson Dep. at 32-41, 122, 139-140)

31. Admitted.

32. Admitted.

33. Admitted.

34. Denied. The Railroad had the absolute right to bar Mr. Wilkinson from the property, or to suspend him, resulting in his termination. (Wilkinson Dep. at 160-162)

35. The Railroad provided the videotapes that Mr. Wilkinson was required to watch and learn concerning job safety and performance. (Wilkinson Dep. at 29-31, 134)[1]

36. The Railroad required Mr. Wilkinson to use certain safety equipment. (Wilkinson Dep. at 155-156)

37. A Railroad official, referred to as the "Programmer," assigned Mr. Wilkinson and his co-workers their work assignments. He dictated what

---

[1] Mr. Wilkinson's deposition was taken on June 10, 2002. It is attached as Exhibit A.

was to be done, where it was to be done, when it was to be done, etc. (Wilkinson Dep. at 32, 33, 40, 41, 72, 122, 139, 140, 146, 147)

38. The Railroad controlled the movement of trains and their schedules. (Wilkinson Dep. at 137, 139)

39. The Railroad's schedule controlled when the employees could take their breaks and eat their meals. (Wilkinson Dep. at 140)

40. The GPS employees were required to know and to follow Railroad safety rules. (Wilkinson Dep. at 140)

41. Mr. Wilkinson considered Railroad employees to be his supervisors and bosses. (Wilkinson Dep. at 131)

42. Mr. Wilkinson was required to obey instructions from Railroad personnel. (Wilkinson Dep. at 145)

43. The Railroad had the right to suspend, terminate and/or discipline Mr. Wilkinson. (Wilkinson Dep. at 140, 160-162)

44. The Harrisburg Intermodal Terminal Agreement (Exhibit B) provides, at Section 2.7, that the GPS employees must comply with the Intermodal Trailer and Container Securement Manual. (Exhibit C) This manual is 53 pages of detailed requirements "for the safe loading and securement of trailers and containers on intermodal freight cars." Thus, the

6

Railroad has set forth, in this one document alone, 53 pages of detailed job rules, instructions, procedures, requirements, etc.

45. The Harrisburg Intermodal Terminal Agreement (Exhibit B) provides, at Section 7.1B, that Mr. Wilkinson and the other GPS employees were required to comply with the Railroad's Safety Rules and Procedures, as enumerated in Conrail Booklet S7H-R2.

46. The Harrisburg Intermodal Terminal Agreement (Exhibit B) provides, at Section 10.3, that Mr. Wilkinson and other GPS employees must meet or exceed detailed training requirements.

47. The Harrisburg Intermodal Terminal Agreement (Exhibit B) provides, at Appendix 9, provides that Mr. Wilkinson and other GPS employees are required to perform a detailed list of preventive maintenance and service functions.

48. The Harrisburg Intermodal Terminal Agreement (Exhibit B) provides, at Appendix 15-4, that the Railroad controls the hours during which Mr. Wilkinson and other GPS personnel perform their job duties.

49. The GPS employees were also required to comply with the NS Intermodal Operations Manual (Exhibit C). This is a 181 page document setting forth in significant detail "procedural information (how to do a task) [and] also refers [employees] to other Norfolk Southern documentation that

7

contain specific steps, actions, and decision-making information for procedures that must be completed properly . . ." (Exhibit C at 1)

Respectfully submitted,

Coffey & Kaye

BY: _____
JOSEPH A. COFFEY, JR.
ROBERT E. MYERS
LAWRENCE A. KATZ
Counsel for Plaintiffs

Coffey & Kaye
718 Two Bala Plaza
Bala Cynwyd, PA  19004
610-668-9800
610-667-3352 (Fax)

## CERTIFICATION OF SERVICE

I, Lawrence A. Katz, Esquire do hereby certify that I am the attorney for Plaintiff and this day serving Plaintiff's Proposed Order, Plaintiff's Reply in Opposition to Norfolk Southern Corporation's Motion for Summary Judgment, Plaintiff's Reply in Opposition to Norfolk Southern Corporation's Local Rule 56.1 Statement of Undisputed Facts and Plaintiff's Memorandum of Law in Support of His Reply in Opposition to Norfolk Southern's Motion for Summary Judgment on the party listed below, and attached documents via U.S. Mail, which service satisfies the requirements of Pa. R.C.P.:

>Craig J. Craig J. Staudenmaier, Esquire
>Nauman, Smith, Shissler & Hall
>200 North Third Street, 18th Floor
>P.O. Box 840
>Harrisburg, PA 17108

COFFEY & KAYE

_____
LAWRENCE A. KATZ
Counsel for Plaintiff

Date: August 13, 2002