ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TERRY BOYD WILKINSON, ET AL :
:
PLAINTIFFS :
: CIVIL ACTION NO.
VS. :
: 01-CV-1146
NORFOLK SOUTHERN CORP., ET AL. :
: HON. SYLVIA H. RAMBO
:
DEFENDANTS :
:

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS REPLY IN OPPOSITION TO
NORFOLK SOUTHERN'S MOTION FOR SUMMARY JUDGMENT**

I.    **Statement of Facts**

Terry Boyd Wilkinson was injured on June 15, 1999. (NS Undisputed Fact 10) On that day he was employed by GPS. GPS was a company employed by Norfolk Southern, and previously its predecessor Conrail, to perform intermodal yard duties. (NS Undisputed Facts 2, 5, 6) These duties included loading and unloading truck trailers and containers from and/or on railcars. (NS Undisputed Facts 2)

Mr. Wilkinson was injured while attempting to release a container from a railcar. In order to do this, a bar is inserted into a female receptacle and is then pulled toward the employee. If the device operates properly the

1

hitch releases. In this case the hitch did not release, but the bar "popped out" of the receptacle, and the momentum caused Mr. Wilkinson to be thrown backwards. In order to not fall off of the railcar, Mr. Wilkinson grabbed onto the railcar and/or trailer located on it, and wrenched his right shoulder and arm. (Wilkinson Dep. at 40-53) Based on his experience dealing with this equipment, Mr. Wilkinson concluded that his bar had been firmly placed in the receptacle and that it "popped out" because the receptacle was flared, deformed and misshaped. This deformity was caused by the Railroad's failure to maintain and repair the receptacles and devices. (Wilkinson Dep. at 44-47, 105-109)

Although Mr. Wilkinson was employed and paid by GPS, the Railroad exercised considerable control and supervision over him and the job that he and his co-workers were performing. The following facts support this statement and are examples of that control:

1. The Railroad provided the videotapes that Mr. Wilkinson was required to watch and learn concerning job safety and performance. (Wilkinson Dep. at 29-31, 134)[1]

2. The Railroad required Mr. Wilkinson to use certain safety equipment. (Wilkinson Dep. at 155-156)

---

[1] Mr. Wilkinson's deposition was taken on June 10, 2002. It is attached as Exhibit A.

2

3. A Railroad official, referred to as the "Programmer," assigned Mr. Wilkinson and his co-workers their work assignments. He dictated what was to be done, where it was to be done, when it was to be done, etc. (Wilkinson Dep. at 32, 33, 40, 41, 72, 122, 139, 140, 146, 147)

4. The Railroad controlled the movement of trains and their schedules. (Wilkinson Dep. at 137, 139)

5. The Railroad's schedule controlled when the employees could take their breaks and eat their meals. (Wilkinson Dep. at 140)

6. The GPS employees were required to know and to follow Railroad safety rules. (Wilkinson Dep. at 140)

7. Mr. Wilkinson considered Railroad employees to be his supervisors and bosses. (Wilkinson Dep. at 131)

8. Mr. Wilkinson was required to obey instructions from Railroad personnel. (Wilkinson Dep. at 145)

9. The Railroad had the right to suspend, terminate and/or discipline Mr. Wilkinson. (Wilkinson Dep. at 140, 160-162)

10. The <u>Harrisburg Intermodal Terminal Agreement</u> (Exhibit B) provides, at Section 2.7, that the GPS employees must comply with the <u>Intermodal Trailer and Container Securement Manual.</u>

3

(Exhibit C) This manual is 53 pages of detailed requirements "for the safe loading and securement of trailers and containers on intermodal freight cars." Thus, the Railroad has set forth, in this one document alone, 53 pages of detailed job rules, instructions, procedures, requirements, etc.

11. The <u>Harrisburg Intermodal Terminal Agreement</u> (Exhibit B) provides, at Section 7.1B, that Mr. Wilkinson and the other GPS employees were required to comply with the Railroad's Safety Rules and Procedures, as enumerated in Conrail Booklet S7H-R2.

12. The <u>Harrisburg Intermodal Terminal Agreement</u> (Exhibit B) provides, at Section 10.3, that Mr. Wilkinson and other GPS employees must meet or exceed detailed training requirements.

13. The <u>Harrisburg Intermodal Terminal Agreement</u> (Exhibit B) provides, at Appendix 9, provides that Mr. Wilkinson and other GPS employees are required to perform a detailed list of preventive maintenance and service functions.

14. The <u>Harrisburg Intermodal Terminal Agreement</u> (Exhibit B) provides, at Appendix 15-4, that the Railroad controls the hours during which Mr. Wilkinson and other GPS personnel perform their job duties.

4

15. The GPS employees were also required to comply with the <u>NS Intermodal Operations Manual</u> (Exhibit C). This is a 181 page document setting forth in significant detail "procedural information (how to do a task) [and] also refers [employees] to other Norfolk Southern documentation that contain specific steps, actions, and decision-making information for procedures that must be completed properly . . . " (Exhibit C at 1)

## II. Standard of Review

Summary judgment, especially in FELA cases, should be rarely granted. The summary judgment standard mirrors the standard for directed verdict which is that the trial judge should only direct a verdict if there can be but one reasonable conclusion as to the verdict. If reasonable minds can differ as to the import of the evidence, a directed verdict or summary judgment should be denied.

When reviewing the evidence the non-moving party, in this case the plaintiff, is entitled to have the evidence and reasonable inferences therefrom, viewed in the light most favorable to him. This is because credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge. *Williams v.*

*Borough of West Chester, Pennsylvania*, 891 F.2d 458, 460 (3d Cir. 1989), *rehrng and en banc denied*, 1989, *as amended*, 1990.

The test of whether an FELA case should be submitted to the jury, and similarly, whether a Motion for Summary Judgment should be denied, is less stringent than ordinary cases. It is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, even to the slightest, in producing the . . . injury for which damages are sought." *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 566 (1957).

The Supreme Court expressed the liberality of this rule by further explaining:

> "It does not matter that, from the evidence, the jury may also with reason, on ground of probability, attribute the result to other causes . . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry, whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Id.* at 506-507.

The Supreme Court then instructed trial judges:

> "Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury the choice of other probabilities." *Id.* at 507.

6

### III. Circumstantial Evidence Is To Be Liberally Accepted

The Supreme Court has specifically approved the use of circumstantial evidence in proving FELA cases. In *Rogers*, supra 352 U.S. at n. 17, the Court held, "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." See also, *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

### IV. Argument

#### A. Liability Under The FELA

##### 1. Mr. Wilkinson Is An FELA Employee

Mr. Wilkinson should be considered an FELA employee, and NS is liable for the damages sustained by Mr. Wilkinson, pursuant to *Kelly v. Southern Pacific Company*, 419 U.S. 318 (1974). This decision provides that an individual is considered an employee of the railroad under the FELA (and is entitled to FELA benefits), if the railroad exercises significant supervision and control over the individual's performance of railroad duties, even if that person is technically employed by another entity.

When viewed in the light most favorable to Mr. Wilkinson, the evidence establishes that NS exercised considerable control and supervision over him. NS closely supervised and controlled Mr. Wilkinson and his coworkers as to when the work was to be performed, where the work was to

7

be performed, and how the work was to be performed. The 15 paragraphs of facts, contained on pages 2-5, infra, will not be repeated. However, they contain numerous examples of the extensive control that NS exercised over Mr. Wilkinson and the job that he was performing.

This is not a situation where one company hires another to perform some work for it and then permits that second company to freely perform the work as it chooses. Exhibits B and C contain approximately 230 pages of detailed rules and instructions, with references to still other writings, for loading and unloading containers on intermodal freight cars. NS dictated, in detail, how Mr. Wilkinson and the other GPS employees were to perform their jobs. This strict control by NS, over the details of how Mr. Wilkinson performed the job, is reasonable because Mr. Wilkinson was hired to perform traditional railroad employee duties, on railroad equipment, using traditional railroad tools.

Hence, Mr. Wilkinson is an employee of NS for FELA purposes.

## 2. NS Is Liable To Mr. Wilkinson Under The FELA

The FELA provides one of the most liberal liability and causation standards known to the law. A railroad is liable to an injured employee, and causation can be proven, with far less evidence than is necessary in a traditional negligence case.

Under the FELA, NS was obligated to provide its employees with a safe place to work. This duty was **non-delegable**. *Shenker v. Baltimore and Ohio R.R. Co.*, 374 U.S. 1, 7 (1963); *Ellis v. Union Pacific R. Co.*, 329 U.S. 649, 653, n.2 (1947). **NS was obligated to make inspections necessary to discover dangers in the places where its employees must work, warn its employees of the dangers, and then protect its employees from those dangers.** *Shenker*, supra at 7-8; *Cazad v. Chesapeake and Ohio Ry. Co.*, 622 F.2d 72, 75 (4th Cir. 1980); *Carter v. Union Railroad Company*, 438 F.2d 208, 211 (3d Cir. 1971); *Isgett v. Seaboard Coast Line R.R. Co.*, 332 F.Supp. 1127, 1140 (D.S.C. 1971), *Bassett v. New York, Chicago and St. Louis R.R. Co.*, 235 F.2d 900, 901 (3d Cir. 1958).

**This duty existed even when the employees would only be at the work place for a brief period of time, or when its employees' work place was on property owned, maintained and controlled by a third party.** *Shenker*, supra at 8, 10; *Ellis*, supra at n.2; *Cazad*, supra at 75; *Schiller v. Penn*

9

*Central Transportation Co.*, 509 F.2d 263, 269 (6th Cir. 1975); *Carter*, supra at 210-11.

Under the FELA, the employer is liable if its negligent failure to provide its employees with a safe place to work,

> "played *any part, even the slightest*, in producing the injury or death for which damages are sought."

*Rogers v. Missouri Pacific R. Co., 352 U.S. 500,* 506 (1957)(emphasis added). This standard has been characterized as one of slight negligence, minimal negligence, and even infinitesimal negligence.

In order to constitute a violation of the FELA, the railroad's conduct need not be the sole cause of the employee's injury. The railroad is liable if its negligence played *any part* in causing an injury, and "it does not matter that . . . the jury may *also* . . . attribute the result to other causes, including the employee's contributory negligence." *Rogers*, supra at 506 (emphasis added)

The United States Supreme Court has recently reaffirmed that the FELA must be *liberally construed* because of the Congressional intent that it be remedial and humanitarian legislation. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-544 (1994).

NS is liable to the plaintiff, as an FELA employee under *Kelly₂* because it failed to provide him with a safe place to work. The railroad failed to

10

inspect this car and its container securing devices, failed to discover that the female receptacle on the container securing devices was deformed, misshaped and unable to function properly, failed to properly maintain the car and its container securing devices, failed to properly repair the car and its container securing devices, required plaintiff to work on a car that had a deformed and misshaped female receptacle, and the railroad failed to warn plaintiff of these dangerous conditions.

The evidence will permit a reasonable jury to conclude that Mr. Wilkinson is a NS "employee" for purposes of the FELA and that NS violated its statutory duty to provide him with a safe place to work. Therefore, summary judgment is not appropriate.

### B.   Liability Under Pennsylvania Common Law

If the jury finds that Mr. Wilkinson was not an "employee" for FELA purposes, then NS is still liable under Pennsylvania common law negligence. Mr. Wilkinson, the employee of an independent contractor, was considered a "business visitor" at the time of his accident. NS owed a duty to use reasonable care to make the premises safe for the use of contractor employees or to give the adequate and timely warning of dangerous conditions. This duty exists even where the independent contractor exercises full control over the property.

The evidence, when viewed in the light most favorable to Mr. Wilkinson, established that NS owned and/or had control over this car. (Wilkinson Dep. at 105)

The deformed female receptacle of the container-securing device rendered the railcar unsafe for Mr. Wilkinson's use, it therefore was not safe for use by the employees of the contractor (Mr. Wilkinson), and accordingly, NS violated its duty with regard to him. This is especially true because the female receptacle could not be clearly seen and therefore NS had an even greater duty to make it safe and/or warn him of the dangerous condition. Pennsylvania Trial Guide, Sec. 32.14.

The jury can reasonably conclude from the evidence that NS breached this common law duty to Mr. Wilkinson and is therefore liable to him.

### V.    Conclusion

For these reasons, it is respectfully submitted that the defendants' Motion for Summary Judgment is inappropriate. The facts, when viewed in the light most favorable to Mr. Wilkinson, establish that he was an FELA employee under *Kelly*, and that NS failed to provide him with a safe place to work. In the alternative, NS violated its common law duties to him.

Therefore, the NS Motion for Summary Judgment should be denied.

Respectfully submitted,

**Coffey & Kaye**

BY: _____
JOSEPH A. COFFEY, JR.
ROBERT E. MYERS
LAWRENCE A. KATZ
**Counsel for Plaintiffs**

Coffey & Kaye
718 Two Bala Plaza
Bala Cynwyd, PA  19004
610-668-9800
610-667-3352 (Fax)

13