**ORIGINAL**

FILED
HARRISBURG, PA

AUG 29 2002

MARY E. D'ANDREA, CLERK
Per _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY BOYD WILKINSON and SHARON WILKINSON, husband and wife,<br><br>        Plaintiffs<br><br>        v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION,<br>        Defendants<br><br>        v.<br><br>GPS TERMINAL SERVICES, INC.,<br>    Third Party Defendant | CIVIL ACTION<br><br><br><br><br><br>JURY TRIAL DEMANDED<br><br>JUDGE SYLVIA H. RAMBO<br><br><br>NO. 01-CV-1146 |

**REPLY OF NORFOLK SOUTHERN RAILWAY
COMPANY AND CONSOLIDATED RAIL CORPORATION,
DEFENDANTS, TO "ADDITIONAL" STATEMENT
OF FACTS SET FORTH IN PLAINTIFFS' REPLY
IN OPPOSITION TO NORFOLK SOUTHERN
RAILWAY COMPANY AND CONSOLIDATED RAIL
CORPORATION'S STATEMENT OF UNDISPUTED FACTS**

35.  Denied as stated. It is admitted that GPS was provided with videotapes from the railroad to show its employees how to safely work around operating railroads, but it is denied that Wilkinson was required to attend any type of class or seminar with regard to safety rules or safety instructions. (Wilkinson, pp. 29-31).

36.  Denied. The railroad did not require Mr. Wilkinson to use certain safety equipment and the reflective clothing to which he referred in his deposition was supplied to him by GPS which directed him to wear it and Mr. Wilkinson never specifically recalled being instructed by the railroad to wear reflective clothing. (Wilkinson, pp. 156-157).

37.  Denied. The railroad programmer did not assign Mr. Wilkinson and his co-workers their work assignments. To the contrary, he informed them of which trains needed to be unloaded and reloaded while the persons assigned to perform the tasks, the equipment used, the manner in which the work was performed, and who performed it was solely at the discretion of GPS supervision and the employees performing the work. (Wilkinson, pp. 32-34, 36, 38, 41, 72-73, 157-159; GPS Answers to Railroads' Requests for Admissions ("RFA") ¶3-8, 10, 12).

38.  Admitted.

39. Denied as stated. The GPS employees solely controlled how they performed the loading and unloading of the rail cars, the manner in which it was performed, the equipment used, the personnel assigned and the speed at which they performed the tasks. (Wilkinson, pp. 157-159; RFA ¶5, 6, 7, 8, 10, 12).

40. Denied as stated. GPS employees were expected to work safely around trains and rail cars but subject to the rules provided to them by GPS and Mr. Wilkinson could not recall being provided with written railroad safety rules other than those regarding the speed limit to travel in the yard and the blue flagging of trains when stopped. (Wilkinson, pp. 159-160).

41. Denied. Mr. Wilkinson stated that he would have been subject to the direct supervision of the GPS working foreman, Larry Heckert, the GPS assistant terminal manager and/or the GPS terminal manager, Dan Bradley or Dale Baucum. (Wilkinson, pp. 131-132; RFA ¶3, 4, 7, 10, 12).

42. Denied as stated. Wilkinson and other GPS employees were expected to perform the loading and unloading services based upon the information provided to them by the railroad programmer, however, the personnel assigned to perform the work, the specific tasks those GPS employees performed, the equipment used, and the manner in which they performed the work was solely under the direct supervision of

GPS and at the discretion of the GPS employees. (Wilkinson, pp. 72-73, 157-159; RFA ¶3-8, 10, 12).

43. Denied. Only GPS had the right to hire, discipline or terminate Wilkinson's employment. (RFA ¶2; Wilkinson, pp. 161-162).

44. Admitted in part and denied in part. It is admitted that the Intermodal Terminal Agreement refers to the Intermodal Trailer and Containment Securement Manual. However, it is denied that this document has any relevance to the current controversy as Mr. Wilkinson admitted during his deposition that although the securement manual "looked familiar" he could not recall ever receiving any printed or written materials about procedures used in the unlocking of hitches. (Wilkinson, p. 73 and Exhibit 5).

45. Admitted in part and denied in part. It is admitted that the Intermodal Terminal Agreement refers to the Intermodal Trailer and Containment Securement Manual. However, it is denied that this document has any relevance to the current controversy as Mr. Wilkinson admitted during his deposition that although the securement manual "looked familiar" he could not recall ever receiving any printed or written materials about procedures used in the unlocking of hitches. (Wilkinson, p. 73 and Exhibit 5). The answer set forth to paragraph 40 above is herein incorporated by reference.

4

46.	It is admitted that the Intermodal Terminal Agreement refers to the Intermodal Trailer and Containment Securement Manual. However, it is denied that this document has any relevance to the current controversy as Mr. Wilkinson admitted during his deposition that although the securement manual "looked familiar" he could not recall ever receiving any printed or written materials about procedures used in the unlocking of hitches. (Wilkinson, p. 73 and Exhibit 5).

47.	It is admitted that the Intermodal Terminal Agreement refers to the Intermodal Trailer and Containment Securement Manual. However, it is denied that this document has any relevance to the current controversy as Mr. Wilkinson admitted during his deposition that although the securement manual "looked familiar" he could not recall ever receiving any printed or written materials about procedures used in the unlocking of hitches. (Wilkinson, p. 73 and Exhibit 5).

48.	Denied as stated. It is admitted that the Intermodal Terminal Agreement provides an Appendix 15.4 that the railroad shall "define" the hours of operation, not control them. By way of additional reply, the answer set forth in paragraph 44 above is herein incorporated by reference.

49.	Denied. There is no evidence of record that GPS employees, at the time of Wilkinson's accident, were required to comply with the Intermodal Operations

Manual. The document attached by Plaintiffs as Exhibit "C" has never been previously introduced of record in this proceeding. By way of further answer, the answer set forth in paragraph 44 above is herein incorporated by reference.

                                        NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
      Craig J. Staudenmaier, Esquire
      Supreme Court ID# 34996

      200 North Third Street, P. O. Box 840
      Harrisburg, PA 17108-0840
      Telephone: (717) 236-3010
      Counsel for Norfolk Southern Railway
      Company and Consolidated Rail Corporation

Date: August 29, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY BOYD WILKINSON and SHARON WILKINSON, husband and wife,<br>　　　　Plaintiffs<br><br>　　v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY and CONSOLIDATED RAIL CORPORATION,<br>　　　　Defendants<br><br>　　v.<br><br>GPS TERMINAL SERVICES, INC.,<br>　　Third Party Defendant | CIVIL ACTION<br><br><br><br><br><br>JURY TRIAL DEMANDED<br><br>JUDGE SYLVIA H. RAMBO<br><br>NO. 01-CV-1146 |

## CERTIFICATE OF SERVICE

AND NOW, on the date stated below, I, **Craig J. Staudenmaier, Esquire**, of the firm of Nauman, Smith, Shissler & Hall, LLP, hereby certify that I this day served the foregoing **Reply of Norfolk Southern Railway Company and Consolidated Rail Corporation, Defendants, to "Additional" Statement of Facts set forth in Plaintiffs' Reply in Opposition to Norfolk Southern Railway Company and Consolidated Rail Corporation's Statement of Undisputed Facts**

7

by depositing a copy of the same in the United States Mail, first class, postage prepaid, at Harrisburg, Pennsylvania, addressed to the following:

> Lawrence A. Katz, Esquire
> Robert E. Myers, Esquire
> **COFFEY & KAYE**
> Two Bala Plaza, Suite 718
> Bala Cynwyd, PA  19004
>
> Jeffrey B. Rettig, Esquire
> Hartman, Osborne & Rettig, P.C.
> 126-128 Walnut Street
> Harrisburg, PA  17101

NAUMAN, SMITH, SHISSLER & HALL, LLP

By: _____
**Craig J. Staudenmaier, Esquire**
**Supreme Court ID# 34996**

200 North Third Street, P. O. Box 840
Harrisburg, PA  17108-0840
Telephone:  (717) 236-3010
Counsel for Norfolk Southern Railway Company and Consolidated Rail Corporation, Defendants

Date:  August 29, 2002